| | | |
|---|---|---|
| **JACK G. DOWNS et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **1:15-cv-00525-JDL** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER ON THE GOVERNMENT'S MOTION TO DISMISS

## I. INTRODUCTION

Jack G. Downs is a veteran of the United States Marine Corps. He and his wife, Mary (collectively, the "Downses"), allege that he was negligently treated by Dr. Thomas Franchini (hereinafter "Franchini"), a former Veterans Affairs podiatrist at the Togus Veterans Affairs Medical Center (the "VAMC"). The Downses also allege that the VAMC and Franchini fraudulently concealed Franchini's negligence, preventing them from asserting their rights in a timely fashion. In their Second Amended Complaint (ECF No. 57), the Downses assert claims against the federal government (alternatively, the VAMC or the "Government") for vicarious liability for Franchini's alleged negligence (Count I); negligent infliction of emotional distress (Count II); loss of consortium (Count III); fraudulent concealment by Franchini (Count IV); fraudulent concealment by the VAMC (Count V); and negligent misrepresentation (Count VI). The Government has moved to dismiss the Second

Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) (ECF No. 63).

In a February 2016 Order, I deferred a final ruling on the Government's motion to dismiss in four separate but related cases[1] in which veterans filed suit against the Government, alleging that they were also negligently treated by Franchini at the VAMC. In that decision, I resolved almost all of the issues raised in the Government's first motions to dismiss in favor of the Government, ruling that Maine's three-year limitations period for bringing claims against health care providers, 24 M.R.S.A. § 2902 (2017), is a statute of repose and not a statute of limitations, and that § 2902 is not preempted by the Federal Tort Claims Act ("FTCA"), 28 U.S.C.A. § 2401(b) (2017). *See Wood v. United States*, 1:14-cv-00399-JDL, ECF No. 45 at 40. The Government argues that because § 2902 is a statute of repose, the three-year repose period for the alleged medical negligence began to run when the last negligent acts or omissions allegedly occurred rather than when the plaintiffs discovered the facts underlying their claims. Therefore, the claims alleged in the complaints in the five separate but related cases filed in 2014 and 2015 are time-barred absent some reason in law or equity for tolling the statute of repose.[2]

---

[1] *See Wood v. United States*, 1:14-cv-00399-JDL; *Mansir v. United States*, 1:14-cv-00503-JDL; *Prescott v. United States*, 1:14-cv-00551-JDL; and *Myrick v. United States*, 1:15-cv-00045-JDL. A fifth related case, *Korsiak v. United States*, 1:15-cv-00220-JDL, also alleges negligence against Franchini but was not subject to my February 2016 Order.

[2] The Downses filed their original complaint in December 2015. It was not among the complaints that were addressed in the February 2016 Order. The Downses' original complaint was ordered stayed in March 2016 to permit the parties to engage in limited discovery on the fraudulent concealment issue.

The Downses assert that the statutory tolling provision in 14 M.R.S.A. § 859 (2017) related to fraudulent concealment applies to their claims:

> If a person, liable to any action mentioned, fraudulently conceals the cause thereof from the person entitled thereto, or if a fraud is committed which entitles any person to an action, the action may be commenced at any time within 6 years after the person entitled thereto discovers that he has just cause of action[.]

14 M.R.S.A. § 859. If § 859 controls the Downses' claims, its six-year limitations period "starts to run when the existence of the cause of action or fraud is discovered or should have been discovered by the plaintiff in the exercise of due diligence and ordinary prudence." *Westman v. Armitage*, 215 A.2d 919, 922 (Me. 1966). Extending the limitations period from three years from the date of the alleged tortious act in accordance with § 2902's statute of repose, to six years from the time the Downses discovered the alleged tortious act, brings their claims within § 859's six-year statute of limitations. Accordingly, I afforded the Downses, and the plaintiffs in the five related actions, the opportunity to conduct limited discovery on the issue of fraudulent concealment and to seek to amend their complaints on the basis of that discovery.

For the reasons explained below, I conclude that a genuine dispute of material fact exists with regard to whether Franchini fraudulently concealed instances of medical malpractice, and that these facts are inextricably intertwined with the merits of the Downses' claims. Thus, I cannot yet determine whether, as a matter of law, § 859 governs the Downses' claims, and I deny the Motion to Dismiss as to Count I (Negligence), Count II (Negligent Infliction of Emotional Distress), and Count III

(Loss of Consortium) for that reason. The Government also moves to dismiss the Downses' remaining claims for lack of subject matter jurisdiction pursuant to restrictions established by the FTCA in 28 U.S.C.A. §§ 2675(a) and 2680(h), and, as explained below, I conclude that Counts IV, V, and VI should be dismissed.

## II. LEGAL ANALYSIS

The Government seeks to dismiss the Second Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). A federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in the suit, i.e., subject matter jurisdiction. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430-31 (2007).

A defendant may challenge the court's subject matter jurisdiction pursuant to Rule 12(b)(1) in two ways: facially or factually. *See Torres-Negrón v. J & N Records, LLC,* 504 F.3d 151, 162 (1st Cir. 2007). In a facial attack, the court accepts as true those allegations in the complaint—"sometimes augmented by an explanatory affidavit or other repository of uncontested facts"—that are relevant to jurisdiction, draws all reasonable inferences from them in the plaintiff's favor, and determines whether they are sufficient to establish the court's subject matter jurisdiction. *Valentin v. Hosp. Bella Vista,* 254 F.3d 358, 363 (1st Cir. 2001); *see also Torres-Negrón*, 504 F.3d at 162.

A defendant may also mount a factual challenge to subject matter jurisdiction:

The second way to engage the gears of Rule 12(b)(1) is by controverting the accuracy (rather than the sufficiency) of the jurisdictional facts

asserted by the plaintiff and proffering materials of evidentiary quality in support of that position. Unlike, say, a motion for summary judgment under Federal Rule of Civil Procedure 56(c), this type of challenge under Federal Rule of Civil Procedure 12(b)(1)—which we shall call a "factual challenge"—permits (indeed, demands) differential factfinding. Thus, the plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties. In conducting this inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction.

*Valentin*, 254 F.3d at 363 (internal citations and footnote omitted). "In a situation where the parties dispute the predicate facts allegedly giving rise to the court's jurisdiction, the district court will often need to engage in some preliminary fact-finding." *Skwira v. United States*, 344 F.3d 64, 71-72 (1st Cir. 2003).

Where, in a factual challenge, the necessary facts are relevant both to jurisdiction and to the merits of the plaintiff's case, however, "the standard applicable to a motion for summary judgment" applies. *Torres-Negrón*, 504 F.3d at 163 (quoting *Autery v. United States,* 424 F.3d 944, 956 (9th Cir. 2005) (internal quotation marks omitted)). If the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law, then the motion to dismiss is granted. *Torres-Negrón*, 504 F.3d at 163; *Me. Human Rights Comm'n v. Sunbury Primary Care, P.A.*, 770 F. Supp. 2d 370, 397 (D. Me. 2011). On the other hand, "[s]hould the plaintiff present evidence showing that the relevant facts are genuinely disputed, the case proceeds to trial and the jurisdictional dispute will be reevaluated once the factfinder has resolved the issues of fact." *Sunbury*, 770 F. Supp. 2d at 397 (quoting *Torres-Negrón*, 504 F.3d at 163); *see also Valentin,* 254 F.3d at 363 n.3 ("[F]or cases in which

the jurisdictional facts, though genuinely disputed, are inextricably intertwined with the merits of the case . . . the court may defer resolution of the jurisdictional issue until the time of trial."). At trial, "[i]t is the plaintiff's burden to prove the existence of subject matter jurisdiction." *Aversa v. United States*, 99 F.3d 1200, 1209 (1st Cir. 1996) (citing *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995)).

The Downses' Second Amended Complaint alleges facts intended to demonstrate fraudulent concealment in two ways: first, fraudulent concealment allegedly committed by Franchini for failing to disclose the results of a postoperative CT scan; and second, fraudulent concealment allegedly committed by the VAMC in concealing and/or failing to disclose Franchini's negligent treatment to the Downses. I address, in order, (1) the Government's challenge to the Downses' allegations of fraudulent concealment; (2) whether a special relationship existed between the Downses and the VAMC that imposed a duty on the VAMC to disclose Franchini's alleged negligence to the Downses; and (3) the Government's contention that Counts II, IV, V, and VI should be dismissed pursuant to FTCA provisions 28 U.S.C.A. §§ 2675(a) and/or 2680(h).

## 1.     Fraudulent Concealment under 14 M.R.S.A § 859

To benefit from the six-year statute of limitations provided by § 859, the Downses must establish that the VAMC or Franchini, acting as its employee, actively concealed facts from Jack Downs and that he relied on the concealment to his detriment. *Brawn v. Oral Surgery Assocs.,* 819 A.2d 1014, 1026 (Me. 2003). "Active concealment of the truth connotes steps taken by a defendant to hide the true state

of affairs from the plaintiff." *Kezer v. Mark Stimson Assocs.*, 742 A.2d 898, 905 (Me. 1999) (internal quotation marks omitted). Active concealment does not require an affirmative false statement and "may consist as well in the concealment of what is true as in the assertion of what is false." *Horner v. Flynn*, 334 A.2d 194, 203 (Me. 1975), overruled on other grounds by *Taylor v. Comm'r of Mental Health & Mental Retardation*, 481 A.2d 139 (Me. 1984); *see also Sprague Energy Corp. v. Massey Coal Sales Co.*, No. 05-222-P-S, 2006 WL 696197, at *17 (D. Me. Mar. 15, 2006) ("Fraud need not take the form of an express false statement; rather, it can be predicated on active concealment of the truth").

When a plaintiff alleges fraudulent concealment through the active concealment of facts, the court must assess the allegations against the elements of fraud: (1) the making of a false representation; (2) of a material fact; (3) with knowledge of its falsity or in reckless disregard of whether it is true or false; (4) for the purpose of inducing another to act upon it; and (5) justifiable and detrimental reliance by the other person. *Brawn*, 819 A.2d at 1026; *see also Harris Mgmt., Inc. v. Coulombe,* 151 A.3d 7, 16 n.7 (Me. 2016).[3] "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice,

---

[3] The Downses argue that the five elements of fraud—as stated in *Brawn*—do not apply in their entirety to tolling for fraudulent concealment under § 859. *See Brawn*, 819 A.2d at 1026. Instead, the Downses argue that a different § 859 analysis articulated in *Bangor Water District v. Malcolm Pirnie Engineers*, 534 A.2d 1326, 1329 (Me. 1988) applies. However, *Brawn*—the more recent decision by the Maine Law Court—is clear on this point, and I apply its analysis. *See Brawn*, 819 A.2d at 1026 ("When a plaintiff contends a genuine issue of material fact concerning the defendant's fraudulent concealment has been generated [such that the plaintiff can "benefit from section 859"], the court assesses the facts against the elements of fraud: (1) the making of a false representation; (2) of a material fact; (3) with knowledge of its falsity or in reckless disregard of whether it is true or false; (4) for the purposes of inducing another to act upon it; and (5) justifiable and detrimental reliance by the other.") (internal quotations omitted).

intent, knowledge, and other conditions of a person's mind may be alleged generally."
Fed. R. Civ. P. 9(b).

Alternatively, the Downses may show that a special relationship existed between them and the VAMC or Franchini, acting as its employee, which imposed a duty to disclose to the Downses the facts associated with the alleged professional negligence, and that the duty was breached by the VAMC or Franchini. *See Brawn*, 819 A.2d at 1026. Absent a special relationship, silence and inaction are insufficient as a matter of law to establish active concealment because omission by silence is not tantamount to supplying false information. *See Brae Asset Fund, L.P. v. Adam*, 661 A.2d 1137, 1140 (Me. 1995) ("[A]bsent a fiduciary or confidential relationship[] there is no duty to disclose information."); *Glynn v. Atl. Seaboard Corp.*, 728 A.2d 117, 120 (Me. 1999).

I analyze the Downses' assertion of fraudulent concealment by considering (A) the relevant allegations of active concealment made by the Downses; (B) the Government's challenge to those allegations; and (C) the Downses' allegations of a special relationship.

## A. The Downses' Allegations of Active Concealment

### i. Concealment by Dr. Franchini

The Downses' Second Amended Complaint alleges that Franchini concealed material facts in an attempt to hide the improper and unnecessary surgery he performed on Jack Downs. Specifically, the Downses allege that in October 2008, Franchini diagnosed Jack Downs as having a "severe" degenerative joint disease of

8

the right mid-foot and, without examining Jack Downs' foot, decided to pursue a surgical treatment plan. The Downses further allege that in August 2008, Franchini performed a fusion procedure on Jack Downs' right foot, despite the fact that a contemporaneous x-ray revealed that his foot was "essentially within normal limits." The Downses allege that Franchini told Jack Downs in October 2008 that he could begin to walk again, but when Jack Downs returned to see Franchini shortly thereafter, the premature walking had caused considerable swelling. In November 2008, the Downses allege, Jack Downs returned to Franchini complaining of significant pain, and Franchini ordered a CT scan of Jack Downs' right foot. The November 2008 CT scan contained a primary diagnostic code of "ABNORMALITY, ATTN. NEEDED," and revealed that Jack Downs' foot had multiple post-surgery complications, including possible "small fractures without identifiable displacement." ECF No. 68-4 at 3. The Downses further allege that neither Franchini nor any other VAMC employee informed them of the results of the abnormal CT scan.

## ii. Concealment by the VAMC

The Downses contend that the VAMC fraudulently concealed Franchini's malpractice from them. Specifically, the Second Amended Complaint alleges that in late 2009, VAMC officials became aware of concerns regarding Franchini's surgical practices. VAMC Chief of Staff, Dr. Timothy Richardson, then directed Dr. Robert Sampson, then Chief of Surgery, to conduct a review of 25 random surgical procedures performed by Franchini. Dr. Sampson completed this review in April 2010 and concluded that there appeared to be "significant documentation and quality of care

issues in a number of [the 25] cases."[4]  On April 27, 2010, the VAMC Professional Standards Board suspended Franchini who would later resign on November 8, 2010. By June 2010, the VAMC was developing a list of patients that they believed had suffered substandard care by Franchini.

The VAMC's disclosure of adverse events related to clinical care is governed by VHA Directive 2008-002 (the "Directive").  The Directive defines three kinds of disclosure, including "Institutional Disclosure" for "cases resulting in serious injury or death, or those involving reasonably expected serious injury, or potential legal liability."  In April 2010, the VAMC prepared an "Issue Brief" concerning the VAMC's investigation of Franchini's care.  The Issue Brief noted that as of April 15, 2010, it was "considered likely that institutional disclosure of unnecessary or inappropriate surgical interventions [by Franchini] will be required."  The Downses allege that by 2010 the VAMC knew that Franchini had provided negligent care to patients, that Jack Downs was one of Franchini's patients, and that Jack Downs had received substandard care from Franchini.  The VAMC contacted the Downses by telephone in January 2013 to alert them that Franchini may have provided Jack Downs negligent care, roughly three years after the VAMC became aware of problems with Franchini's patient care.  The Downses allege that the VAMC actively concealed Franchini's negligence from them by deliberately delaying its investigation and disclosure of Franchini's negligence.

---

[4]  It bears emphasis that this and the other alleged facts have not been fully examined and tested by the trial process and finally determined by a factfinder.

### B.    The Government's Challenge

The Government has submitted declarations and exhibits which, it contends, establish that neither Franchini nor the VAMC engaged in fraudulent concealment. In response, the Downses have submitted their own declarations, deposition transcripts, and exhibits.

As to Franchini, the Government argues that (1) there is no evidence of active concealment; (2) there is no evidence that Franchini ever saw the CT scan results and therefore had information to conceal; (3) there is no evidence of fraudulent intent by Franchini; and (4) the CT scan results are not evidence of substandard care and are therefore not a material fact. As to the VAMC, the Government primarily argues that there is no evidence or allegation that the VAMC had any information to conceal relating to potentially substandard care suffered by Jack Downs until after the Downses' period of repose had run.

The Government makes both a facial and a factual challenge to the Downses' allegations. Neither party cites to any decisional authority in this Circuit as to whether a defendant can have it both ways by asking the court to consider the sufficiency of a complaint's jurisdictional allegations, while simultaneously disputing most of those allegations and submitting evidence outside the pleadings. In *Torres-Negrón*, however, the court noted that "if the movant, either in his motion or in any supporting materials, denies or controverts the pleader's allegations of jurisdiction, then he is deemed to be challenging the actual existence of subject matter jurisdiction, and the allegations of the complaint are not controlling." 504 F.3d at 162 n.8 (1st Cir.

2007), quoting 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1363, at 653-54 (1969); *but see Hollingsworth v. United States*, No. CV-05-80-B-W, 2005 WL 3435099, at *4 n.5 (D. Me. Dec. 14, 2005) ("[A]ddressing the sufficiency of the allegations in the Complaint would appear to be a necessary prerequisite before examining their underlying accuracy."). I adopt the approach suggested by *Torres-Negrón*. Where, as here, a party disputes the jurisdictional allegations of a complaint and offers a substantial body of evidence in support of its position, the court's inquiry should focus on that evidence to determine whether subject matter jurisdiction actually exists. Although I proceed accordingly, I note that even if a facial analysis was required, the allegations of the Downses' Second Amended Complaint would survive facial scrutiny.

It is apparent from the factual record submitted by the parties that the jurisdictional facts (i.e., fraudulent concealment) and the facts related to the merits (i.e., negligence) are intertwined. Both concern what Franchini allegedly did and said to Jack Downs, and what was and was not communicated to the Downses regarding the potential cause of his ongoing pain. As such, I employ the standard applicable to a motion for summary judgment in ruling upon the Government's factual challenge, *see Torres-Negrón*, 504 F.3d at 162-63, by assessing the record in the light most favorable to the Downses as the nonmovant and resolving all reasonable inferences in their favor. *See Small Justice LLC v. Xcentric Ventures LLC,* 873 F.3d 313, 323 (1st Cir. 2017). Applying that standard, I conclude that the Downses' allegations of active concealment have no factual foundation and do not raise a genuine issue of

disputed material fact concerning whether Franchini concealed instances of alleged negligence from the Downses and whether the VAMC also concealed Franchini's alleged negligence from the Downses.

The allegations that Franchini ordered the CT scan of Jack Downs' foot in response to his post-operative pain, but failed to report the results to him, do not establish active concealment because "active concealment" requires that a defendant take steps to hide the true state of affairs from the plaintiff. *Kezer*, 742 A.2d at 905. The Downses have not articulated or presented evidence of any postoperative misrepresentations made by Franchini or of what, if any, steps Franchini took to conceal the CT scan results from them, other than to allege silence and inaction on Franchini's part. This is insufficient as a matter of law to establish active concealment because omission by silence does not constitute the supplying of false information outside of a special relationship. *Glynn*, 728 A.2d at 120; *Brae*, 661 A.2d at 1140. However, as explained below, *see* Section II.1.C *infra*, this conclusion does not foreclose the Downses' assertion of fraudulent concealment against Franchini.

As to the VAMC, I conclude that there is no evidence that the VAMC had actual knowledge of any material information until after the three-year statute of repose had run. "In order to prevail in a claim that a cause of action has been fraudulently concealed, a party . . . must show that the defendant had actual knowledge of a fact before the defendant can be charged with an intent or design to conceal it from the plaintiff." *Bangor Water Dist.*, 534 A.2d at 1329. The evidence indicates that Dr. Sampson reviewed Jack Downs' medical record between March 13 and March 30,

2012, finding evidence that Franchini misdiagnosed Jack Downs and performed surgery where it was not indicated. ECF No. 63-2 at ¶ 16; ECF No. 68-1 at 1. The Downses contend, however, that by 2010, when the VAMC began a review of all of Franchini's surgical cases, the VAMC had actual knowledge of the possibility that every surgical patient of Franchini had been subject to negligent care, and knew that Jack Downs had received substandard care on the basis of his medical records.

Even assuming that the VAMC was on notice in 2010 of the possibility that every Franchini patient was exposed to possible substandard care, which the Government disputes, that mere possibility does not equate to actual knowledge that Jack Downs had suffered an adverse event, even if the VAMC were in possession of records that would later be found to indicate the same. Thus, I conclude that it is undisputed that the VAMC did not gain actual knowledge that Jack Downs had suffered an adverse event prompting disclosure until March 2012, more than three years after Jack Downs' November 2008 CT scan, which was Jack Downs' last contact with Franchini. Even assuming, therefore, that the VAMC did conceal material information from the Downses starting in March 2012, the Downses' claims would be time-barred by operation of § 2902. *See Brawn*, 819 A.2d at 1026 ("After a cause of action expires pursuant to the three-year statute of limitation no amount of subsequent concealment can revitalize an already stale claim.").

The Downses' allegations of active fraudulent concealment by the VAMC thus do not create a dispute of fact and I conclude that § 859 does not apply to their claims on that basis.

### C.     Special Relationship

In the alternative, the Downses contend that even absent active concealment, a special relationship existed between them and Franchini and the VAMC such that Franchini's failure to communicate the results of Jack Downs' CT scan, and the VAMC's failure to inform the Downses of Franchini's malpractice, constitutes fraudulent concealment. *See Noveletsky v. Metro. Life Ins. Co.*, No. 2:12-cv-00021-NT, 2013 WL 2945058, at *9 (D. Me. June 14, 2013) ("In Maine, fraud by failure to disclose or by silence may be established . . . by demonstrating a special relationship . . . that imposes an affirmative duty to disclose.") (internal citations omitted).

### i. Special Relationship between Jack Downs and Dr. Franchini

Because the doctor-patient relationship "is one of great confidence and trust," it imposes a duty upon the doctor to disclose all pertinent facts to the patient. *Millet v. Dumais,* 365 A.2d 1038, 1041 (Me. 1976).   Here, the Downses contend that Franchini's relationship with Jack Downs as his treating podiatrist imposed upon him a duty to disclose the fact that a postoperative CT scan of Jack Downs' foot—coded "ABNORMALITY, ATTN NEEDED"—was abnormal and revealed, among other things, "partial disruption of the medial inferior wall of the navicular bone," "linear irregularities along the cortical bone of the navicular adjacent to the fusion hardware," and "possibly small fractures without identifiable displacement."   ECF No. 68-4 at 3.

I conclude that there is a genuine factual dispute as to whether Franchini fraudulently concealed the CT scan results from Jack Downs in violation of the duty he owed Jack Downs based on the physician/patient special relationship. The Government does not dispute that Franchini never informed the Downses of the CT scan results. Instead, the Government argues that the Downses do not specifically allege, and the record does not indicate, that Franchini saw the CT scan images or related radiology report. Thus, the Government argues, there is no basis to conclude that Franchini had actual knowledge of a concealed fact or a fraudulent intent to prevent its discovery by the Downses. In support, the Government cites to the Declaration of Jason McDowell, the VAMC's Chief of Health Information Management Systems. McDowell reviewed the records the VAMC maintains for Jack Downs and concluded that "it does not appear that Dr. Franchini reviewed either [the] radiology report for the November 19, 2008 CT scan of Mr. Downs' right foot or the images themselves." ECF No. 62. at ¶ 6. Thus, according to the Government, Franchini did not have actual knowledge of material information (the CT scan results) and could not have had fraudulent intent.

Jason McDowell's declaration does not explain how the relevant medical records demonstrate that Franchini did not review or have knowledge of the CT scan results, nor does the declaration provide any basis for determining how likely it was that Franchini did not review the results. The Government also has not produced a declaration from Franchini stating that he did not review or have knowledge of the CT scan results. It is commonly understood, however, that physicians generally

review the results of the CT scans they order. *See* ECF No. 68-5 at ¶ 3 ("When a doctor orders a test, such as a CT scan, that requesting physician has the obligation to follow up and report the results to the patient."). Thus, notwithstanding McDowell's record review, it is not unreasonable to infer that Franchini had knowledge of the CT scan results. It is also noteworthy that Franchini did not relay the results of the CT scan to Jack Downs but did communicate the more favorable x-ray results a week earlier, and there is evidence that the Downses moved to Florida in apparent reliance on Franchini's statement that the November 12, 2008 x-rays were "fine," ECF No. 68-3 at ¶ 10, and thereafter did not seek additional appointments, ECF No. 62 at ¶ 5. Thus, a jury could also reasonably find that the Downses acted in reliance on Franchini's failure to inform Jack Downs of the results of the November 19, 2008, CT scan.

Furthermore, the record includes an April 2012 memorandum authored by Yuri Walker, the Director of the Risk Management Program at the Veterans Health Administration's Office of Quality, Safety, and Value, on behalf of a "Subject Matter Expert Panel" convened by the VAMC to evaluate Franchini's patient care (the "Walker Memorandum" or "Memorandum"). The Memorandum states that "it appears that [Franchini] was actively falsifying some medical records, stating that the patient was doing well, when the opposite was true." ECF No. 57-7 at 4. The Memorandum also contains the following question and answer:

> Q: Is it certain that records were being actively falsified, or was it a case of poor clinical judgment?

A: It appears to be a combination of both active falsification and poor clinical judgment. The radiographs did not support the decisions to operate in most cases. In other cases, patients have stated that what the provider told them is different from what was documented in the chart. It has been noted that there was a lack of conservative management in most cases, and an emphasis on surgery.

*Id.* at 5.

Reviewing the record in the light most favorable to the Downses, I conclude that a jury could reasonably find that Franchini intentionally breached his duty to inform Jack Downs of all pertinent facts based on (1) Franchini's failure to report the CT scan results coded "ABNORMALITY, ATTN NEEDED," in combination with (2) the evidence that Franchini engaged in active falsification of records and misled some of his patients.

The Government also argues that the Downses have not alleged that the CT scan results indicated substandard care by Franchini, and, therefore, the results were not material and their nondisclosure did not conceal evidence of negligence from the Downses. In response, the Downses argue that Jack Downs experienced pain and swelling after his surgery, that the CT scan results were coded "ABNORMALITY, ATTN NEEDED" and showed various problems with Jack Downs' foot, and that Jack Downs' postoperative pain was due to Franchini's substandard care. These allegations, accepted as true, are sufficient to demonstrate materiality. Based on the evidence in the record, I conclude that a jury could reasonably determine that the CT scan results implicated Franchini's negligence and are, therefore, material.

Resolving all reasonable inferences in the Downses' favor, I conclude that a factfinder could find that Franchini's failure to report the CT scan results to Jack

Downs was done knowingly and with the intent to conceal, that the concealment by silence was material and made to induce the Downses' reliance, and that the Downses reasonably relied on that silence. *See Harris Mgmt., Inc.,* 151 A.3d at 16 n.7. Thus, the facts related to fraudulent concealment are inextricably intertwined with the merits of the Downses' negligence claims, and I cannot determine whether, as a matter of law, § 859 applies. I deny the Motion to Dismiss for that reason as to Counts I, II, and III.

### ii. Special Relationship between Jack Downs and the VAMC

Maine law defines a "special relationship" as a relationship "giv[ing] rise to an affirmative duty to aid and protect, such as the relationship between a common carrier and passenger, employer and employee, parent and [minor] child, or innkeeper and guest." *Estate of Cummings v. Davie,* 40 A.3d 971, 974 (Me. 2012) (quotation omitted).

The nature of Jack Downs' relationship with the VAMC—that of a Marine Corps veteran receiving outpatient care for a foot and ankle injury—does not reach the level of a power imbalance that characterized the relationships in which the Maine Law Court has recognized a special relationship. *See, e.g.*, *Dragomir v. Spring Harbor Hosp.,* 970 A.2d 310, 315 (Me. 2009) (finding special relationship between hospital and highly vulnerable psychiatric patients); *Fortin v. Roman Catholic Bishop of Portland,* 871 A.2d 1208, 1220-22 (Me. 2005) (finding special relationship between church and student/altar boy who was sexually abused by a priest). While the VAMC occupied an important role in Jack Downs' life to the extent that it was providing him

with medical care, its presence in his life "was not marked by a great disparity of position and influence." *Gniadek v. Camp Sunshine at Sebago Lake, Inc.,* 11 A.2d 308, 314-15 (Me. 2011).

Accordingly, there was no special relationship between the Downses and the VAMC, and there is no basis to apply § 859 on that basis.

## 2. Dismissal of Counts IV, V, and VI

In addition to its argument that the Downses' claims are time-barred pursuant to § 2902, the Government further argues that the Downses' negligent infliction of emotional distress, fraudulent concealment, and negligent misrepresentation claims should be dismissed for lack of subject matter jurisdiction pursuant to Federal Tort Claims Act provisions 28 U.S.C.A. § 2675(a) as to Counts II, IV, and V, and 28 U.S.C.A. § 2680(h) as to Counts IV, V, and VI. The Downses have neither objected nor responded to these arguments in their opposition brief. "Failure to respond to a motion to dismiss means that opposition to the motion is waived . . . and the motion may be granted for that reason alone[.]" *Andrews v. Am. Red Cross Blood Servs.*, 251 F. Supp. 2d 976, 979 (D. Me. 2003). However, in an excess of caution, I address the merits of the Government's arguments.

Section 2680(h) limits the FTCA's waiver of sovereign immunity established by § 1346(b)—which authorizes suits against the United States for certain torts— over "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, *misrepresentation*, deceit, or interference with contract rights[.]" 28 U.S.C.A. § 2680(h) (emphasis added). Thus,

because the Downses' claims for negligent misrepresentation (Count VI) and fraudulent concealment (Counts IV and V) arise out of alleged misrepresentations, this Court lacks jurisdiction. *See Mullens v. United States*, 785 F. Supp. 216, 219 (D. Me. 1992) ("The misrepresentation exception to the FTCA bars suits based on negligent as well as deliberate misrepresentations . . . whether based on false statements or a failure to provide information[.]") (quotation marks and citations omitted), *aff'd*, 976 F.2d 724 (1st Cir. 1992). Although fraudulent concealment applies to the Downses' case for purposes of the statute of limitations analysis under § 859, that issue is separate from, and does not save, the Downses' affirmative claim for fraudulent concealment as a basis to recover damages. I therefore grant the Government's Motion to Dismiss as to Counts IV, V, and VI.

Section 2675(a) is a notice-of-claim provision and also limits the FTCA's waiver of sovereign immunity. It provides that "[a]n action shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency." 28 U.S.C.A. § 2675(a). Here, the Government contends that when the Downses' presented their administrative claims to the Department of Veteran's Affairs, they did not include claims for negligent infliction of emotional distress (Count II) or fraudulent concealment (Counts IV and V). Because I have already concluded that Counts IV and V should be dismissed pursuant to § 2680(h), I do not analyze them further under § 2675(a), and I limit my analysis to Count II asserting negligent infliction of emotional distress.

To determine whether a plaintiff's administrative claim complies with § 2675(a), the First Circuit has adopted a pragmatic test: "[A]s long as the language of an administrative claim serves due notice that the agency should investigate the possibility of particular (potentially tortious) conduct and includes a specification of the damages sought, it fulfills the notice-of-claim requirement." *Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34, 40 (1st Cir. 2000) (finding non-compliance with § 2675(a) where the plaintiff gave administrative notice of claims arising from a postal service trade show and then brought causes of action arising from another incident not mentioned in the notice).

Here, although the Downses only noticed claims for medical negligence and loss of consortium, their administrative notice did describe two "incidents" giving rise to harm: (1) the negligent care and treatment by Franchini and the VAMC, and (2) the VAMC's failure to inform the Downses of his condition. *See Ortiz-Lebron v. United States*, No. 10-1513 (SEC), 2012 WL 6552782, at *11 (D.P.R. Dec. 14, 2012) ("The emphasis is not on the actual causes of action, but on the notification that an accident has occurred so that the agency can conduct a full investigation of the incident."). The Downses' administrative notification that they were seeking damages arising from medical negligence was sufficient to alert the VAMC to the possibility of a claim for negligent infliction of emotional distress. *See id.* ("[D]ecedent's pre-death pain and suffering cause of action can be gleaned from the administrative claim, because plaintiffs informed the government that they sought compensation for the very same incident."); *Curtis v. Porter*, 784 A.2d 18, 25-26 (Me.

2001) (recognizing that a separate duty to act reasonably to avoid emotional harm to others arises in the limited circumstance where "a special relationship exists between the actor and the person emotionally harmed" and that negligent infliction claims are "routinely added to complaints stating a cause of action in tort"). The Government's Motion to Dismiss is therefore denied as to Count II.

## III.  CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss the Second Amended Complaint (ECF No. 63) is **GRANTED** as to Counts IV, V, and VI, and **DENIED** as to Counts I, II, and III.

**SO ORDERED.**

**Dated this 23rd day of February 2018.**

**/s/ JON D. LEVY**
**U.S. DISTRICT JUDGE**
